D

# AMENDMENT TO THE PRICE PROTECTION PROGRAM AGREEMENT BETWEEN CONEXANT SYSTEMS, INC. AND CONFERENCE AMERICA INC.

This Amendment ("Amendment") to that certain Price Protection Program Agreement dated August 1, 1999 between Conexant Systems, Inc. ("Conexant") and Conference America Inc. (Conference America), as amended, ("Agreement") is effective as of December 1, 2003 ("Effective Date").

## BACKGROUND

Since August 1, 1999 Conference America has provided certain conference calling and other services to Conexant pursuant to terms and conditions set forth in the Agreement. Conexant and Conference America desire to reaffirm and amend the Agreement and to revise and replace certain attachments to the Agreement.

Accordingly, the parties agree as follows:

1. **Term**. The term of this Amendment begins on the Effective Date. Unless earlier terminated as expressly permitted under this Amendment, the term of this Amendment and the Agreement will expire on November 1, 2005.

2. **Replacement of Attachments**. The terms and conditions set forth in the existing Attachments A, B and D and the Two-Way Confidentiality Agreement between the parties dated as of February 1, 1999 (the Confidentiality Agreement") are hereby deleted and replaced with the terms and conditions in the new Attachments A, B, D and E respectively, which are attached to this Amendment. Attachment C is no longer applicable to the Agreement, and so is hereby deleted.

3. **Services and Pricing**. During the term of this Agreement and subject to revisions made pursuant to this Paragraph 3, Conference America will provide the services described in Attachment A ("Services") at the pricing set forth in Attachment A. Conexant will establish Conference America as its preferred vendor for such Services. The parties will review the prices for Services annually beginning on the first anniversary of the Effective Date.

4. **Termination**. Either party may terminate this Agreement immediately upon notice to the other party if that other party becomes a party to any proceeding involving its liquidation, dissolution, bankruptcy or insolvency or transfers substantially all of its stock or assets. . Either party, with or without cause, may terminate this agreement at any time upon fifteen (15) days notice to the other party pursuant to Section 10 of this Amendment.

5. **Indemnity**. Conference America will indemnify and hold harmless Conexant, its directors, officers, agents and employees against all third party claims actions or demands (including attorneys' fees) for personal injury or death or damage to property arising out of the negligent acts or omissions or willful misconduct of Conference America in connection with its obligations under this Agreement.

6.  **Insurance.** Conference America will carry worker's compensation and comprehensive general liability insurance in such form as to protect both Conference America and Conexant from any claims or damages for bodily injury, including death, and any damages to property which may arise from the negligent acts or omissions of Conference America under this Agreement. Conference America agrees to waive any rights of subrogation it or its insurers may have against Conexant under the applicable worker's compensation law.

7.  **Limitation of Liability.** NEITHER PARTY WILL BE LIABLE TO THE OTHER FOR ANY SPECIAL, EXEMPLARY, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, ANY COSTS TO PROCURE SUBSTITUTE SERVICES OR ANY LOST PROFITS, DATA OR BUSINESS, LOSS OF USE OR BUSINESS INTERRUPTION RELATING TO THE SERVICES (OR ANY UNAVAILABILITY THEREOF), EVEN IF SUCH PARTY KNEW OF THE POSSIBILITY OF SUCH DAMAGES.

8.  **Force Majeure.** Either party will be excused from its obligations hereunder (other than payment obligations) when and to the extent that performance is delayed or prevented by any circumstance reasonably beyond its control, including without limitation, fire, flood, explosion, accident, breakdown of machinery or equipment, terrorism, sabotage, riots or other civil disturbances or compliance with any law, order, regulation, recommendation or request of any governmental authority.

9.  **Assignment.** Neither party shall assign its rights and obligations under this Agreement without the prior written consent of the other party, which may not be unreasonably withheld. Notwithstanding the foregoing, either party may assign, delegate or sublicense all or any portion of its rights and obligations under this Agreement to (i) the surviving entity resulting from a merger or consolidation involving such party and (ii) the acquiring entity of a sale or other disposition of all or substantially all of the assets of such party.

10. **Notice.** Unless otherwise provided in this Agreement, all notices and other communications in connection with this Agreement must be in writing and mailed or delivered by courier to the Parties at the addresses shown on the signature page below (or at such other addresses as may be given in writing by the Parties to one another) and will be effective when delivered. Email notice will also be sufficient with proof of delivery provided that such email notice includes the phrase "Notice Under Price Protection Agreement."

11. **Waiver.** No waiver, termination or discharge of this Agreement, or any of the terms or provisions hereof, will be valid unless in writing and signed by the party against which enforcement of such waiver, termination or discharge is sought. This Agreement may not be modified or amended, except by a writing signed by both parties.

12. **Governing Law.** This Agreement is governed by California law.

13. **Dispute Resolution.** In the event of any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof, the parties shall diligently attempt to settle the dispute, claim, question, or disagreement. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a

just and equitable solution satisfactory to both parties. If they do not reach such solution within a period of 60 days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration in accordance with JAMS' Streamlined Arbitration Rules and Procedures.

**14.    Severability.** All provisions of this Agreement are severable, and any provision of this Agreement found by a court of competent jurisdiction to be invalid or unenforceable will not affect the validity or enforceability of any other provision of this Agreement. To the extent legally permissible, the Parties will replace any illegal, invalid or unenforceable provision of this Agreement with a valid provision that will implement the intended purpose of the illegal, invalid or unenforceable provision.

**15.    Integration.** This Agreement and Amendment, (including Attachments A, B, D and E), contain the entire agreement and understanding concerning the subject matter hereof between the Parties hereto.

**SIGNED AND DELIVERED.**

| Conference America, Inc. | Conexant Systems, Inc |
| --- | --- |
| 7079 University Court | 4000 MacArthur Blvd. |
| Montgomery, Alabama 36117 | Newport Beach, CA 92660 |
| Fax 334-260-0707 | Fax 949-483-4688 |
| Email: bob.pirnie@yourcall.com; With a copy to: sales@yourcall.com | Email Thomas.Noonan@Conexant.com |
| By: [signature] | By: [signature] |
| Name: R.M. Pirnie | Name: Thomas C. Noonan |
| Title: President | Title: Mgr., Strategic Sourcing |
| Date: November 21, 2003 | Date: November 24, 2003 |

# ATTACHMENT A

| Conferencing Services | Special Discounted Prices |
|---|---|
| Always On ™ Automated Domestic 800 Meet Me Service | $0.050/minute |
| Operator Assisted (Operator Dial-Out) | $0.050/minute |
| 800 Meet Me Operator Answered | $0.050/minute |
| Port Connection Fee Operator Dial Out | $4.25/port |
| Port Connection Fee Operator Answered Meet Me | $3.50/port |
| Replay | $0.249/minute |
| Cancellation Fee | NONE |
| C2K Monthly Port Fee | NONE |
| International Outbound Toll Surcharge | |
| Australia | $0.246/minute |
| Canada | $0.112/minute |
| China | $0.225/minute |
| Finland | $0.246/minute |
| France | $0.118/minute |
| Germany | $0.179/minute |
| Hong Kong | $0.348/minute |
| Iceland | $0.754/minute |
| India | $0.359/minute |
| Israel | $0.447/minute |
| Italy | $0.246/minute |
| Japan | $0.145/minute |
| Korea | $0.145/minute |
| Mexico | $0.712/minute |
| Singapore | $0.320/minute |
| Sweden | $0.187/minute |
| Switzerland | $0.179/minute |
| Taipei | $0.372/minute |
| Taiwan | $0.145/minute |
| United Kingdom | $0.095/minute |

# ATTACHMENT A

| Conferencing Services | Special Discounted Prices |
|---|---|
| • International Inbound Toll Surcharge (ITFS) | |
| Australia | $1.224/minute |
| Canada | $0.243/minute |
| China | $0.990/minute |
| Finland | $1.030/minute |
| France | $0.435/minute |
| Germany | $1.011/minute |
| Hong Kong | $1.236/minute |
| Iceland | Not Available |
| India | Not Available |
| Israel | $1.153/minute |
| Italy | $1.011/minute |
| Japan | $0.515/minute |
| Korea | $0.515/minute |
| Mexico | $1.436/minute |
| Singapore | $1.224/minute |
| Sweden | $1.152/minute |
| Switzerland | $1.011/minute |
| Taipei | $1.224/minute |
| Taiwan | $0.689/minute |
| United Kingdom | $0.345/minute |
| • Fax Services | |
| FastFax | $0.267/page |
| FastFax Now | $0.267/page |
| • Web Echo Data Conferencing | $9.154/participant |
| • Notification Calls | $3.22/location |
| • Call Taping | $8.74/call |
| • Transcription Service | $8.74/page |
| • Question & Answer | $0.230/minute |
| • Always On™ Operator Assistance | $4.14/port |
| • Custom Reporting | $105.00/hour |
| • Custom Development | $155.00/hour |

Attachment A

Page 3

**Large Party Calls**

All scheduled calls that are over 50 lines are subject to a $3.50 charge per unused line if less than 60% of the reserved lines participate in the call. This charge will be applied to the difference between 60% and the actual number of parties participating on the call. If the call is scheduled to run during normal business hours (7:00am to 7:00pm) and it is canceled or rescheduled for more than a 1 hour delay with less than 1 hour notice, the above unused line charges will apply. If the call is scheduled to run after normal business hours (7:00pm to 7:00am) and it is canceled with less than 24 hours notice, the unused charges will apply.

**Automated Calls**

It is the responsibility of Conexant to maintain the confidentiality of the access numbers and access codes. Conference America will change the access codes as requested by Conexant. Conexant agrees to pay for all usage associated with these numbers and codes.

**Additional Services**

Additional services are available at Conference America's Standard Prices effective at the time services are rendered.

**Billing and Payment**

Correct/accurate invoices for services will be provided monthly to Conexant representative for billing, PROFITLINE, INC. Conexant agrees to pay in U.S. funds by the 20th day following the invoice date. Late payments will be subject to interest at the lower rate of 1-1/2% per month or the highest rate allowable under law. The invoices will reflect the appropriate discount amounts and/or credits; however, Conexant reserves the right to withhold reasonably disputed amounts due under inappropriately prepared invoices without a penalty. If a dispute is resolved in favor of Conference America, then Conexant will pay the balance due plus interest as set forth above back to the due date. If Conexant fails to pay amounts due hereunder within 10 days after receipt of notice that such amount is past due, then Conference America may withhold Services until all past due amounts are paid in full and/or terminate this Agreement at any time effective immediately upon notice to Conexant. Payment obligations for services provided prior to any termination of this Agreement will survive such termination.

**Taxes and Fees**

Conexant agrees to pay all taxes and fees, if any, which may be imposed with respect to Conexant's use of the Services. Any such applicable taxes and fees will be shown in the applicable invoice.

**Billing Records**

Conference America will retain copies of invoices and billing records related to this Agreement after the date hereof for at least three years from receipt of the applicable payment. Conexant may, at its own expense, examine such records during normal business hours.

## ATTACHMENT B

### PERFORMANCE COMMITMENT

Conference America will endeavor to provide the conference calling Services requested by Conexant in accordance with all generally-accepted industry standards. If Conference America fails to provide Services requested and scheduled because of a performance failure by its equipment or personnel, then Conference America will, as Conexant's Sole Remedy, provide a partial or full credit for charges resulting from the call. All problems must be reported in writing by Conexant to Conference America within 24 hours of occurrence.

### AVAILABILITY COMMITMENT

Conference America will endeavor to provide conference-calling Services at the times requested by Conexant. Conference America will provide Conexant conference calls for calls with less than thirty (30) participants within fifteen (15) minutes of the time requested or the call is free, provided that Conference America is given timely notice (in accordance with the scheduling intervals set forth below) and provided that such free call will be Conexant's sole remedy and Conference America's sole obligation with respect to any call that does not meet such standard. For requested calls with more than thirty (30) participants, Conference America will use diligent efforts to make such calls available within fifteen (15) minutes of the requested time, but makes no commitment regarding such availability. Scheduling interval during business days (8:00 am - 5:00 pm Central Time Zone) is thirty (30) minutes and one (1) hour for holidays, nights and weekends. **CONFERENCE AMERICA DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, DESCRIPTION, FITNESS FOR A PARTICULAR PURPOSE AND INFRINGEMENT.**

### IMPLEMENTATION AND ORIENTATION PROGRAM

Conference America will provide an implementation and orientation program to Conexant. Our associates will, subject to Conexant's cooperation and provision of access, work with Conexant users to explain Conference America's services, support their needs and implement Conference America's conference calling services in the Conexant organization. Conexant shall provide a corporate list/directory of names and telephone numbers of conference call users to Conference America as a means of fully educating and orienting users to Conference America's Services and implementing the any new Conference America services within Conexant.

## ATTACHMENT C

**Deleted**

## ATTACHMENT D

### Continuing Implementation Program

Conference America will mail user packages to each new leader designated on organizational chart/list provided by Conexant.

**ATTACHMENT D**

# ATTACHMENT E

## CONFIDENTIALITY OBLIGATIONS

1. **Confidential Information.** A party's "Confidential Information" includes (a) any and all information or data (whether oral, written, electronic or otherwise) that is related to or owned or controlled by such party, to the extent such information or data is valuable to the party or is otherwise not readily available to competitors of such party, and (b) the existence of the Agreement.

2. **Confidentiality Obligations.**

   (a) Either party may only use the other party's Confidential Information as necessary in connection with its performance under the Agreement. Either party may solely disclose the other party's Confidential Information (i) with the other's prior written consent; (ii) internally on a need-to-know basis in connection with the Agreement provided that the party informs the recipient that the information is confidential, directs the recipient to comply with this Agreement, and assumes responsibility for any use or disclosure by recipient of the other party's Confidential Information in a manner contrary to the terms and conditions of the Agreement; and (iii) to the extent required by law only after giving the other party prompt written notice that affords the other an opportunity to obtain a protective order or other remedy.

   (b) Each party will exercise reasonable care to protect the other party's Confidential Information from unauthorized disclosures and upon request and upon termination of the Agreement, each party will return or destroy the other party's Confidential Information, including, without limitation, all analyses, databases, studies or other documents prepared by a party using the other party's Confidential Information.

3. **Remedies.** Each party may seek equitable and/or injunctive relief in addition to any other rights and remedies available to the party to redress or prevent violations of this Agreement. Each party hereby agrees that a payment bond is not a required prerequisite to the obtaining of such injunctive relief by the other and each party hereby waives any right to demand or request the posting of any such bond by the other.

4. **Term.** The obligations of each party under this Exhibit E will survive for two years after the expiration or termination of the Agreement. Notwithstanding the foregoing, each party will continue to be bound by obligations under this Exhibit E regarding any of the other party's Confidential Information that is a trade secret for so long as such information constitutes a trade secret under applicable law.

5. **General Disclaimer.** Nothing herein will obligate either party to disclose to the other party any particular item of information not related specifically to this agreement.

6. **Advertisement.** Neither party may use the other party's corporate name, logo, trademark, or other identifying information in advertising, sales promotions, press releases, or publications without the express written authorization of the other party.

7.    **U.S. Export Control Laws and Regulations.** Conference America, for itself and for its employees and agents who may be provide access to Conexant's technical information, or who may be provided access to Conexant's premises in carrying out the Services under this Agreement, acknowledges its obligations to control access to such technical information ant to ensure that such access does not result in a violation by it of the U.S. Export Control Laws and Regulations. Conexant represents and warrants that neither it nor its employees will use the Services in a manner that violates the U.S. Export Control Laws and Regulations or any other applicable laws.

1227133_6                               E-2