# EXHIBIT "C"

## Page 1

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CONFERENCE AMERICA, INC., )
)
    Plaintiff, )
)
vs. ) No. 2:05CV1088-F
)
CONEXANT SYSTEMS, INC., )
)
    Defendants. )
_____)

DEPOSITION OF PAUL EDGE
Newport Beach, California
Thursday, May 18, 2006

Reported by:
CARI A. FOLSOM
CSR No. 9822
JOB No. 634341B

## Page 2

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CONFERENCE AMERICA, INC., )
)
    Plaintiff, )
)
vs. ) No. 2:05CV1088-F
)
CONEXANT SYSTEMS, INC., )
)
    Defendants. )
_____)

Deposition of PAUL EDGE, taken on behalf of Plaintiff, at 4000 MacArthur Boulevard, 10th Floor, Newport Beach, California, beginning at 1:40 p.m. and ending at 4:07 p.m. on Thursday, May 18, 2006, before CARI A. FOLSOM, Certified Shorthand Reporter No. 9822.

## Page 3

APPEARANCES:

For Plaintiff:
    TROUTMAN SANDERS LLP
    BY: THOMAS E. BORTON, IV
    Attorney at Law
    600 Peachtree Street, N.E., Suite 5200
    Atlanta, Georgia 30308-2216
    (404) 885-3275

For Defendant:
    STARNES & ATCHISON LLP
    BY: JOSEPH S. MILLER
    Attorney at Law
    Seventh Floor, 100 Brookwood Place
    P.O. Box 598512
    Birmingham, Alabama 35259-8512
    (205) 868-6000

Also Present:
    KAREN HERMANN

## Page 4

INDEX

| WITNESS | EXAMINATION |
|---|---|
| PAUL EDGE | |
|   BY MR. BORTON | 6 |
|   BY MR. MILLER | 82 |

EXHIBITS

| PLAINTIFF | | PAGE |
|---|---|---|
| 6 | Various e-mails produced by defense counsel; 6 pages | 6 |

EXHIBITS FOR REFERENCE

| PLAINTIFF | | PAGE |
|---|---|---|
| *1 | Verified complaint and exhibit binder | 19 |
| 2 | E-mail from Paul Edge to Chip Polich, dated 6/29/05; Bates No. S&A 284 | 26 |
| 3 | E-mail from Paul Edge to Lewis Brewster, dated 6/29/05; Bates No. S&A 335 | 29 |
| 4 | E-mail from Paul Edge to Chris Gorciak, dated 6/29/05; Bates No. S&A 336 | 34 |
| 5 | E-mail from Paul Edge to Admin Professionals, dated 7/12/05; Bates No. S&A 338 | 35 |

\* Retained by counsel for Plaintiff

1  Q  Okay. Besides the e-mails we've talked about
2  that are attached to this verified complaint that we've
3  been through -- I have a better way to ask that.
4       I'm trying to get a feel when your last e-mail
5  to or from Conference America was. Do you remember?
6  A  I tried to reach out to Jason, according to
7  this e-mail, on July 12th.
8  Q  And again, not a trick question, I know on Tab
9  P we got a July 20th e-mail.
10 A  I think after the July 20th e-mail -- it looks
11 to be July 20th, according to the e-mails that we
12 documented.
13 Q  Okay. You can't remember any other e-mails?
14 A  Outside of what's in this exhibit, I don't
15 recall anything beyond the dates that are in here.
16 Q  Okay. And that's a fair way to say it. Other
17 than the e-mails or letters referenced in this exhibit
18 and any phone conversations we've just discussed, you
19 don't remember any other contact with Conference
20 America?
21 A  I do not remember. I do not remember. I don't
22 recall any other beyond that, no.
23    MR. BORTON: Okay. I think that's all I got.
24    MR. MILLER: I just want to ask a very few
25 questions, Paul, to make sure something is clear.

Page 81

1       EXAMINATION
2  BY MR. MILLER:
3  Q  Do you remember when Mr. Borton was asking you
4  questions earlier about Exhibit A, which is the terms
5  and conditions sheet printed off from a Conference
6  America Web site which is dated July 25, 2005?
7  A  I remember him asking questions about that.
8  Q  And in case someone should misinterpret his
9  questions and your answers, I want to ask a very clear
10 and precise question about the deactivation fee. Do you
11 see that in paragraph 5-A of Exhibit A to the verified
12 complaint?
13 A  I see that.
14 Q  And I'm specifically referring to the language
15 referencing a $74.95 deactivation fee. Do you see that?
16 A  I see that.
17 Q  When you first looked at the Conference America
18 Web site in June 2005 to determine what the new rates
19 would be, was there any deactivation fee on the Web site
20 information that you looked at?
21 A  On the first time I went to review the rates?
22 Q  Yes.
23 A  There was no deactivation fee at that time, no.
24 Q  Is that something that you believe you would
25 have noticed if you read the paragraph that it was

Page 82

1  contained in if it was contained in it?
2     MR. BORTON: Object to the form.
3  BY MR. MILLER:
4  Q  You can answer.
5  A  Oh, can you restate that question?
6  Q  Sure. If a deactivation fee of $74.95 per
7  leader account had been contained in the paragraph that
8  you read to determine the new rates, do you think you
9  would have noticed it?
10    MR. BORTON: Object to the form.
11    THE WITNESS: Absolutely.
12 BY MR. MILLER:
13 Q  Why would you have noticed it?
14 A  Because I stated to -- earlier in the
15 deposition, in the conversation, I specifically went to
16 this document to look up the rates that were in this
17 document. And at that time, when I first looked it up,
18 I was looking at rates, and there were the rates, but
19 there were no deactivation fees at that time.
20    MR. MILLER: Thank you. That's all I have.
21    MR. BORTON: No further questions.
22 //
23 //
24
25

Page 83

1
2
3
4
5
6
7
8
9       I, PAUL EDGE, do hereby declare under
10 penalty of perjury that I have read the foregoing
11 transcript; that I have made such corrections as noted
12 herein, in ink, initialed by me, or attached hereto;
13 that my testimony as contained herein, as corrected, is
14 true and correct.
15      EXECUTED this _____ day of _____,
16 2006, at _____, _____.
           (City)              (State)
17
18
19      _____
        PAUL EDGE
20
21
22
23
24
25

Page 84