IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CONFERENCE AMERICA, INC., | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 2:05 cv 1088-WKW |
| CONEXANT SYSTEMS, INC., | ) |
| Defendant. | ) |

**RESPONSE OF DEFENDANT CONEXANT SYSTEMS, INC.
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the defendant **CONEXANT SYSTEMS, INC.**, who responds to the Motion for Summary Judgment filed by the plaintiff, Conference America, Inc., as follows:

### I. Introduction.

The defendant, Conexant Systems, Inc. (hereinafter referred to as "Conexant") has filed its own Motion for Summary Judgment, and continues to maintain that its Motion for Summary Judgment is due to be granted, for the reasons stated therein. For purposes of responding to the Motion for Summary Judgment filed by Conference America as the plaintiff, Conexant will temporarily set aside its argument that summary judgment should be granted in behalf of Conexant, but only to demonstrate that, at the very least, there are definitely disputed and genuine issues of material fact which preclude summary judgment being granted in behalf of the plaintiff, Conference America. In so doing, Conexant does not waive in any way, or withdraw from in any way, its arguments that summary

{B0614031}

judgment is due to be granted in its behalf, rather than in behalf of Conference America. Conexant simply wishes to make it clear that, in responding to Conference America's Motion for Summary Judgment, it will point out that there are genuine issues of material fact which definitely preclude summary judgment for the plaintiff.

## II.     The Deactivation Fee Amounts are a Prime Example of a Disputed Issue of Fact which Precludes Summary Judgment.

Conference America adopts and incorporates by reference the facts contained in Section I of its Motion for Summary Judgment. The major portion of Conference America's request for damages involves approximately $146,000.00 worth of "deactivation fees" applicable to 1,778 conferencing accounts. Conference America claims that its reference to the Conference America website, which allegedly contained language concerning this disputed deactivation fee, served as a unilateral offer which was accepted and therefore served to create a unilateral contract. Conference America confirms that it is not seeking recovery for any breach of contract under the Price Protection Program Agreement in question, or any written agreement. Rather, Conference America states that it "instead seeks damages for Conexant's breach of the contractual terms set forth in Conference America's website Terms and Conditions – contractual terms that governed Conexant's request for and payment of Conference America's services through July 11-31, 2005." (See Complaint, ¶45, p. 19).

It stands to reason that, for even a colorable argument that there is no genuine issue of material fact regarding this deactivation fee, Conference America must produce substantial evidence pursuant to Alabama Code § 12-21-12 that the deactivation fee was

on the website when Conexant gave instructions to disconnect/deactivate all of these 1,778 accounts (in addition to proving that Conexant agreed to it). Conference America has not done that, and cannot do that. To the contrary, two witnesses have cast serious doubt as to whether the deactivation fee language was on the website when Conexant gave the instructions to Conference America to disconnect the accounts.

Jason Shanks is a former employee of Conference America. He has testified by deposition. His testimony was most enlightening as to the possible genesis of this deactivation fee, and when it first appeared on Conference America's website.[1] Mr. Shanks' deposition is attached hereto as Exhibit "A". He basically testified that he became suspicious of the $146,000.00 in deactivation fees when he realized that an instruction he had complied with, from an executive at Conference America a few weeks earlier, was involved. To summarize, Mr. Shanks testified that he was instructed by Rob Pirnie, a Vice President at Conference America, to go into the Terms and Conditions on the website, back-date that section of the website, print it out and place it in the "Conexant folder." (See Exhibit "A", pp. 66-68, 72-74, 77, 80-81). He later heard executives at Conference America, including the President of Conference America, Mr. Bob Pirnie, saying that Conference America was going to "get" Conexant with this deactivation fee, and that Conexant would "regret" its decision to consider other service

---

[1] In its Response to Conexant's Motion for Summary Judgment, Conference America points out that Mr. Paine Bone, Conference America's Rule 30(b)(6) deponent concerning the website, attempted to offer hearsay evidence that the Conference America website had not been altered since March 6, 2005, and that the deactivation fee language was on the website at that time. Mr. Bone had to admit that he cannot in any way attest to the reliability of the searches he performed on another website to gain this information. Indeed, the documents he provided are hearsay and due to be struck by this Court and not considered. Mr. Bone had to admit that he does not know how accurate the information he obtained may or may not be. These documents are the subject of a Motion to Strike filed contemporaneously by Conexant.

providers. (See attached Exhibit "A", pp. 80-81). Mr. Shanks felt that the deactivation fee had in fact been placed on the website after termination of the contract in order to "get" Conexant for such deactivation fees.

Another witness has offered similar testimony creating a genuine issue of material fact. Conference America's counsel took the deposition of Mr. Paul Edge, the Manager of Global Telecom and Networking of Conexant. That deposition transcript is attached as Exhibit "B". Mr. Edge was involved in receiving Mr. Bob Pirnie's June 24, 2005 letter terminating the Price Protection Program Agreement. Mr. Edge testified that, when he looked at the Conference America website after termination of the contract occurred, the deactivation fee was not on the website. (See Exhibit "B", pp. 82-83).

There could not be a more hotly disputed material issue of fact than this deactivation fee. Conference America claims damages in the amount of $146,000.00 for the deactivation fee. Paul Edge and Thomas Noonan, in behalf of Conference America, have testified that there was never any agreement between Conexant and Conference America regarding any deactivation fee which would be applied to Conexant conferencing accounts which had been created pursuant to the written contract in question. (See attached Exhibits "C" and "D", which are Exhibits "1" and "2" to Conexant's Motion for Summary Judgment). This testimony, coupled with the testimony of one of Conference America's own former employees, obviously serves to clearly create, at the very least, a genuine issue of material fact regarding this deactivation fee, which is the bulk of the damages sought by Conference America. As such, Conference America's Motion for Summary Judgment should be denied based on this dispute alone.

### III. The Case Law Conference America Relies on is Distinguishable and Not Useful Authority Here.

Conference America basically relies on three opinions in its Motion for Summary Judgment. The first is SouthTrust Bank v. Williams, 775 So. 2d 184 (Ala. 2000). Like the other two cases relied upon, this opinion involves a ruling on a motion to compel arbitration, rather than a dispositive ruling on the merits. It is easily distinguished from the present situation, and therefore cannot be relied upon to grant a Motion for Summary Judgment in behalf of a plaintiff in a disputed breach of contract action, and assess damages. The plaintiffs in Williams had in fact **signed** "change in terms" clauses for checking accounts indicating that they in fact **agreed** to rules and regulations that may "hereafter" be adopted by the bank. Id. at 185. A signature card signed by one of the plaintiffs stated clearly that the rules and regulations agreed to may be amended and/or changed in the future, and that the newly amended or changed rules and regulations "shall be" binding "as if fully assented to[.]" Id. The bank then amended its regulations and added an arbitration clause. Id. at 186.

The Alabama Supreme Court noted that the plaintiffs took no action that could be considered inconsistent to assenting to these arbitration clauses. As a result, the Court held that the plaintiffs "implicitly" assented to them. Id. at 189. The present situation is completely different. There are no "change in terms" clauses involved here, signed or even unsigned. To the contrary, as pointed out in Conexant's Motion for Summary Judgment, the written agreements in question contain "entire agreement" clauses which are in fact dispositive in Conexant's behalf. (See Conexant's Motion for Summary

{B0614031}                                     5

Judgment). No one from Conexant ever affirmatively signed any sort of document indicating that they would "hereafter" be bound by any new terms and conditions. Again, to the contrary, the only agreed to terms between Conexant and Conference America are outlined in the written agreements in question, which are the "entire agreements" between the parties. The Williams decision obviously involved nothing like a negotiated and agreed upon Price Protection Program Agreement, like we have here, that was the "entire agreement" between the parties. Additionally, as much as Conference America would like for this to be the case, its referral of Conexant to the Conference America website could never be considered an "amendment" to the contract in question, as contemplated in Williams. In Williams the plaintiffs "implicitly" assented to an arbitration clause that was later added to the agreement in question. Referring to a website is not in any way a written "amendment" to a negotiated and bargained-for written agreement, like we have here.

Conference America next relies on Crawford v. Talk America, Inc., No. 05-CV-0180-DRH, 2005 U.S. Dist. LEXIS 23181 (SD Ill. Oct. 6, 2005). This is a slip opinion from the United States District Court of Illinois, Southern District. This case is equally inapplicable. It is procedurally and substantively different. It too involves arbitration, but is a ruling by the trial court rather than an appellate court. Crawford involved a class action alleging "unjust and unreasonable rate overcharges" by a company who appears to be similar in operation to Conference America. The opinion points out that the plaintiff had "signed up" for telephone service with the defendant by way of a conversation that was actually recorded. This is completely different than the negotiated and bargained for

Price Protection Program Agreement between Conference America and Conexant, which was the "entire agreement" between the parties. The <u>Crawford</u> situation appears to be more akin to someone who may have entered Conference America's website and clicked on the "I agree" button, which <u>would</u> contractually obligate such a person to pay a deactivation fee, assuming the deactivation fee language was on the website at the time. The <u>Crawford</u> opinion does <u>not</u> fit the facts we have here, with a negotiated written agreement that was the "entire agreement," then a unilateral termination of the agreement, coupled with a hotly disputed issue of exactly when, and why, Conference America placed "deactivation fee" language on its website, and whether there was any agreement to it. As a ruling on a motion to compel arbitration, <u>Crawford</u> obviously is not useful precedent for this Court to grant summary judgment in behalf of a *plaintiff*, and assess damages, as is requested here by Conference America.

Finally, Conference America relies on <u>Boomer v. AT&T Corp.</u>, 309 F.3d 404 (7th Cir. 2002). A cursory review of this opinion also reveals its inapplicability. Like the other two cases, it involved a trial court's ruling on a motion to compel arbitration (in a putative class action), and an appeal therefrom. The plaintiffs in <u>Boomer</u> alleged overcharging by the defendant. The defendant moved to compel arbitration, in part arguing that a Customer Service Agreement required arbitration and prohibited class actions. The trial court denied the motion to compel arbitration.

In <u>Boomer</u>, the Seventh Circuit applied the Communications Act of 1934, as amended by the Telecommunications Act of 1996. Obviously we do not have anything like that here, and certainly not to the merits of this action. In <u>Boomer</u> there was <u>no</u>

negotiated "entire agreement" of the parties, like we have here. The <u>Boomer</u> Court also pointed out that the plaintiff in that action did <u>not</u> claim on appeal that it had <u>not</u> received the Customer Service Agreement which contained the arbitration provision in question. <u>Id</u>. at 414. In the present case, Conexant has affirmatively stated that it did <u>not</u> review the terms and conditions of the Conference America website, at the time in question, and certainly did not agree to them. (<u>See</u> Exhibits "C" and "D", Affidavits of Paul Edge and Tom Noonan). As pointed out earlier, there is a substantial amount of evidence suggesting that the deactivation fee language was not even on the website at the time, and may have in fact been added at a later date for completely inappropriate reasons to "get" Conexant for its decision to shop around for another provider of conference call services.

These three cases are clearly inapplicable to a motion, filed by a plaintiff in a disputed breach of contract action, seeking summary judgment for a disputed amount, along with attorneys' fees. These three opinions relied on by Conference America involved rulings as to whether arbitration was appropriate. They do not in any way stand for the proposition that summary judgment could somehow be granted by this Court in behalf of Conference America, as the plaintiff, and have damages assessed, especially in the face of very genuine disputed issues of fact, as discussed above. These cases are <u>not</u> rulings on dispositive motions. They are, rather, rulings on whether arbitration was appropriate. Obviously the arbitrator made the judgment on the merits in those instances.

    **IV.**   **<u>Conclusion</u>.**

This case is simply not one of the rare instances in which a Court could fairly and rightly grant summary judgment in behalf of a plaintiff in a breach of contract action.

There are indeed genuine issues of material fact, as discussed above. The cases relied upon by Conference America are inapplicable for the reasons discussed above. The Court need look no further than the Affidavits of Thomas Noonan and Paul Edge to glean the disputed issues. (See Exhibits "C" and "D"). Conexant reiterates that, not only is this case inappropriate for summary judgment in behalf of Conference America, it is indeed one appropriate for summary judgment in the opposite direction, in favor of Conexant. (See Conexant's Motion for Summary Judgment).

WHEREFORE, PREMISES CONSIDERED, the defendant Conexant requests this Court to enter an Order denying Conference America's Motion for Summary Judgment, as there are indeed genuine issues of material fact.

                                            **s/Joseph S. Miller**
Joseph S. Miller
Attorney for Defendant
ID #: asb-4242-m60j
STARNES & ATCHISON, LLP
Post Office Box 598512
Birmingham, AL 35259-8512
Telephone:(205) 868-6049
Facsimile: (205)868-6099
E-mail:jsm@starneslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19th 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to he following:

Thomas Ernest Borton, IV, Esquire
TROUTMAN SANDERS, L.L.P.
600 Peachtree Street, NE
5200 Bank of America Plaza
Atlanta, GA  30308-2216

    Respectfully submitted,

    **s/Joseph S. Miller**
    Joseph S. Miller
    Attorney for Defendant
    ID #:  asb-4242-m60j
    STARNES & ATCHISON, LLP
    Post Office Box 598512
    Birmingham, AL  35259-8512
    Telephone:(205) 868-6049
    Facsimile: (205)868-6099
    E-mail:jsm@starneslaw.com