IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CONFERENCE AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| ) | FILE NO: |
| v. ) | 2:05cv1088-WKW |
| ) | |
| CONEXANT SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

**CONFERENCE AMERICA'S REPLY TO CONEXANT'S RESPONSE TO
CONFERENCE AMERICA'S MOTION FOR SUMMARY JUDGMENT**

**I.    SUMMARY OF THE ISSUES AND ARGUMENTS**

As the final brief in the sequence established by the Court regarding the parties' cross-motions for summary judgment, it may be helpful to summarize briefly the issues and arguments as presented to date.

Conference America's claim is based on a theory of unilateral contract under Alabama law: following termination of their written Price Protection Agreement, the parties entered into a series of unilateral contracts for post-termination services. Those services included a variety of services relating to hosting Conexant's post-termination conference calls, and also included the service of deactivating all of Conexant's 1,778 conferencing accounts. There is no dispute that Conexant

Conexant--Reply to Resp. to MSJ (Version 3).doc

requested all of these services or that Conference America properly performed them.

All of the arguments presented relate to the pricing applicable to these post-termination services.  Conference America contends that the applicable prices were those specified in its offer to provide post-termination services, which was expressly conditioned on Conference America's standard terms, conditions, and prices in effect at the time each service was performed.  Conference America further contends that Conexant accepted and agreed to these terms, thereby forming unilateral contracts under Alabama law, when it used each service.

Significantly, Conexant does not raise in its briefs any argument about the price charged for any service except the deactivation of its accounts.  In other words, for all of the non-deactivation services for which Conference America is claiming payment in this lawsuit, Conexant has made no argument that any issue of material fact exists.  Accordingly, the only issue for the Court to decide regarding those services is which party is correct about the law.

Conexant argues that the terminated merger clause in the terminated Price Protection Agreement somehow caused the terminated discounted pricing under that agreement to somehow continue in effect.  Conexant cites no authority for this proposition, and there appears to be none.  Conexant further argues that because it never explicitly stated that it agreed to the website terms and pricing, the necessary

mutuality of agreement was absent as a matter of law. Conference America, however, has cited legal authority establishing that a unilateral contract by definition requires no explicit statement by the accepting party: the necessary mutuality is inferred as a matter of law from the *action* of the accepting party when it uses the service. Because it is undisputed that the terms of the offer were clear about pricing–the price would be governed by the standard terms in effect as of the time each service was performed–Conexant's undisputed *action* of using each service supplies the necessary acceptance.

With respect to the price for deactivation, Conexant argues that unless Conference America can prove that the $74.95 price was posted on the website as of the dates of Conexant's emails *requesting* deactivation (as opposed to the actual date Conexant wanted the service *performed*), then no contract was formed. Conexant asserts the obvious point that mutuality is required to form a contract, but does not cite any authority for its proposition that Conference America must prove an explicit website posting of the price as of the time the service was initially requested.

Conference America has pointed out that the timing of the website posting is a red herring because Conference America's offer was explicitly restricted to prices in effect *as of the time the service was performed*. Conference America has provided undisputed evidence that the $74.95 price was in fact explicitly posted on

the website at least several days before deactivation was performed.  Further, it has provided evidence from a third party, the Internet Archive (www.archive.org), which Conexant has moved to strike but has not presented any evidence to contradict, that the price was posted over four months before deactivation–long before any of the events at issue in this litigation arose.  Moreover, Conference America has pointed out that the issue of when the price first appeared on the website is in fact irrelevant because it is undisputed that both the website and Conference America's offer (and for that matter the terminated agreement and the parties' course of dealing) expressly confirm that a specific price did not have to be posted anywhere.  It is undisputed that services with unposted prices were often used by Conexant.  It is also undisputed that the parties agreed that if Conexant wished to know an unposted price in advance, it could make a written request at any time, which Conexant did not do.

The issues to be decided by the Court on summary judgment are therefore:

1. Whether Conexant is entitled to summary judgment based on its merger clause and mutuality arguments.

2. Whether Conference America is entitled to summary judgment as a matter of law for its claims for non-deactivation services, Conexant having made no argument as to any factual dispute regarding them.

3. Whether a disputed issue of material fact exists regarding the price for deactivation services.  If not, Conference America would be entitled to summary judgment as a matter of law on the same basis as for non-deactivation services.

The first of these issues has already been briefed in connection with Conexant's Motion for Summary Judgment, and will not be addressed in this brief except to the extent Conexant's merger clause and mutuality arguments are also being advanced as reasons to deny Conference America's Motion for Summary Judgment. Accordingly, this brief is concerned primarily with the second and third issues. As explained below, there exist no issues of material fact with respect to Conference America's claims for either deactivation or other services, and Conference America is thus entitled to summary judgment as a matter of law with respect to all of its claims.

## II.    ARGUMENT

In its Response to Conference America's Motion for Summary Judgment, Conexant fails to raise any genuine issue of material fact to defeat Conference America's Motion. Conexant takes issue only with the $74.95 deactivation fees that Conference America has charged it, and therefore admits that it breached unilateral contracts with Conference America on the other non-deactivation services that it used following the July 10, 2005 termination of the Price Protection Agreement.

Moreover, Conexant fails to raise any genuine issue of material fact with respect to the deactivation fee. Conexant's contention that this fee did not appear on Conference America's website on the dates that Conexant emailed its requests

for account deactivation is irrelevant. This is because, as Conference America informed Conexant in its June 24 termination letter, the price of the deactivation service would be determined at the time that Conference America performed the service, which was July 31. Although there was no requirement that the fee for any service be posted anywhere, the deactivation fee was undisputedly on Conference America's website before July 31. Accordingly, Conexant's purported ignorance of the fee cannot preclude the formation of unilateral contracts between the parties for the rendition of the deactivation service.

Finally, Conexant fails to meaningfully distinguish the cases that Conference America uses to support its Motion for Summary Judgment. The cases detail how unilateral service contracts are formed, and demonstrate that such contracts were formed between the parties in this case—contracts that Conexant has breached by its failure to pay for Conference America's services. The Court should, accordingly, grant Conference America's Motion for Summary Judgment.

A.  **Conexant Disputes Only The Date Of Posting Of The Deactivation Fee And Has Therefore Conceded All Facts Underlying Conference America's Claims.**

In its Response to Conference America's Motion for Summary Judgment, Conexant disputes one—and only one—fact: whether Conference America's $74.95 deactivation charge appeared on its website on the dates that Conexant emailed its requests that Conference America deactivate all accounts as of July 31.

As explained in the next section, this fact is not relevant or material to Conference America's claims. Conexant does not dispute any of the facts actually relied on by Conference America in its Summary Judgment Motion. In a nutshell, these undisputed facts are:

- Conference America and Conexant were parties to a Price Protection Agreement that allowed Conexant to purchase certain types of conferencing services from Conference America at a discount.[1]

- Conference America terminated the Price Protection Agreement, effective July 10, 2005.[2]

- The discounted prices appearing in the Price Protection Agreement existed only during the Agreement's term.[3]

- Conference America offered to perform post-termination services only at its standard terms, conditions, and prices, as shown on its website.[4]

- Conexant continued to use Conference America's services after the July 10 termination, until July 31, 2005, when all of Conexant's conferencing accounts were deactivated pursuant to Conexant's prior written request.[5]

- Conexant's internal and external correspondence shows that Conexant knew that its post-termination usage would be at higher prices than those under the terminated Price Protection Agreement.[6]

---

[1] (Exs. B, C, and D to the Verified Complaint.)
[2] (Exs. K, O, U to the Verified Complaint; see also Def.'s Mot. for Summ. J. at 2, 15, 17 agreeing that Conference America terminated the Price Protection Agreement through its June 24, 2005 letter, attached to the Verified Complaint as Ex. K); (Def.'s Resp. to Pl.'s First Req. for Admis. No. 1, attached to this Reply as Ex. 1.)
[3] (Ex. D to the Verified Complaint ¶ 3.)
[4] (See Exs. K, O, U, and GG to the Verified Complaint; Def.'s Resp. to Pl.'s First Req. for Admis. No. 2, attached to this Reply as Ex. 1.)
[5] (See Exs. M, Q, R, S, T, Z, and DD to the Verified Complaint; Deposition of Paul Edge, Program Manager, IT Ops, Conexant Sys., Inc., attached to Def.'s Resp. to Pl.'s Mot. for Summ. J. as Ex. B, at 43.)

- The termination letter, the website terms, and for that matter the Price Protection Agreement itself clearly state that the applicable price was the price in effect at the time the service was rendered.[7] And the prices billed to Conexant, which Conexant has refused to pay, were in fact Conference America's Standard Prices in effect at the time each post-termination service was rendered.

- Conexant did not communicate any disagreement whatsoever regarding Conference America's Standard Prices until August 1, 2005–the day after all services had been rendered and all accounts deactivated.[8]

These facts conclusively establish the elements of Conference America's breach of contract claim: (1) the formation of valid, binding unilateral contracts between the parties through offer, communication, acceptance, and consideration, as set forth in Conference America's Motion for Summary Judgment;[9] (2) Conference America's performance under these contracts through the rendition of services to Conexant; (3) Conexant's nonperformance due to its refusal to pay for the services; and (4) resulting damages to Conference America, including interest and attorney's fees.[10] By declining to offer evidence to dispute the facts listed

---

[6] (See Exs. N and P to the Verified Complaint; Deposition of Thomas Noonan, Director, Strategic Sourcing, Conexant Sys., Inc., attached to Pl.'s Mot. for Summ. J. as Ex. 1, at Exs. 3-4.)

[7] (Exs. A ¶ 5a, D (at Attach. A, p. A-3), and K to the Verified Complaint.)

[8] (See Exs. V, Z, and DD to the Verified Complaint; see also Def.'s Resp. to Pl.'s Third Req. for Produc. of Docs., attached to this Reply as Ex. 2 (demonstrating that Conexant did not send its July 28 letter indicating that it did not agree to new service terms and conditions until July 29, and that that letter did not arrive until August 1, after Conference America had performed all services for Conexant that are currently in dispute).)

[9] (Pl.'s Br. Supp. Mot. for Summ. J. at 16-23.)

[10] Reynolds Metals Co. v. Hill, 825 So. 2d 100, 105 (Ala. 2002) (listing elements of breach of contract claim).

above, Conexant has legally conceded that it formed binding unilateral service contracts with Conference America subsequent to termination of the Price Protection Agreement.[11] Because it has not paid the appropriate prices (Conference America's Standard Prices) for any of those services, it concedes that it has breached unilateral service contracts with Conference America for every service, including the deactivation service.

Conference America claims damages of $195,979.79, plus interest and attorney's fees, and is entitled to summary judgment as to this full amount.[12] Indeed, even setting aside the deactivation fee that Conexant's irrelevant argument about the posting date attempts to dispute, Conexant would still owe Conference America $49,525.83 for services rendered ($195,979.79 less $146,453.95 for the deactivation fees[13]), plus interest and attorney's fees.

B.   **Conexant Owes The Deactivation Fees To Conference America.**

The *only* factual issue that Conexant raises in its Response is whether or not the $74.95 deactivation fee appeared on Conference America's website on the

---

[11] Shaw v. Coosa County Comm'n, No. 2:03-cv-1034-F, 2005 U.S. Dist. LEXIS 33282, at *53 n.19 (M.D. Ala. Oct. 26, 2005) (finding that, because the plaintiff failed to offer evidence in opposition to the defendant's motion for summary judgment, there were no issues of material fact precluding the granting of that motion); Atlas Therapy, Inc. v. United States, 66 F. Supp. 2d 1203, 1203 n.1 (N.D. Ala. 1999) (finding that, because one party failed to respond to the moving party's submitted facts in support of its summary judgment motion, these facts were deemed admitted for summary judgment purposes).

[12] (Verified Complaint ¶¶ 46-47.) $146,453.95 of this amount constitutes deactivation fees, and the remaining $49,525.83 is for other services that Conference America rendered. (Exs. Z and DD to the Verified Complaint.)

[13] (Exs. Z and DD to the Verified Complaint.)

dates that Conexant sent its emails requesting the deactivation service.[14] Conexant claims that the deactivation fee did not appear on Conference America's website as of those dates, and that, therefore, there was no mutual assent.

In support of this contention, Conexant relies upon the deposition testimony of one of its employees, Paul Edge, whose testimony contradicts Conexant's prior written assertion that its employees had not even read the website terms.[15] Conexant also invokes the deposition testimony of a former Conference America employee, Jason Shanks. Ironically, Mr. Shanks actually testified that he *didn't* know when the price might have been posted.[16] In fact, the only reason Conexant included his testimony appears to be a desire to sling a little mud. Mr. Shanks is apparently a disgruntled former employee who alleges that he was asked to backdate a document relating to Conexant. However, no such document has ever surfaced, and there is no allegation whatsoever that Conference America is relying in any way on any such document to support its claims.

In any event, neither Edge's nor Shanks's testimony, nor the issue of when the deactivation fee appeared on the website, is relevant to the elements of Conference America's breach of contract claim. Under the undisputed terms of the unilateral contracts on which Conference America's claims rely, the only date that

---

[14] (Def.'s Resp. at 2-4.)
[15] Compare Deposition of Paul Edge, attached to Def.'s Resp. to Pl.'s Mot. for Summ. J. as Ex. B, at 82-83, with Ex. V to the Verified Complaint.
[16] See Deposition of Jason Shanks, attached to Def.'s Resp. to Pl.'s Mot. for Summ. J. as Ex. A, at 97, 104-05, 108.

matters is the date that Conference America performed the deactivation service, July 31, 2005.[17] As Conference America clearly stated in its June 24, 2005 termination notice containing the offer to provide post-termination services, "[a]ny services used or requested by Conexant after termination will be made available only on and subject to Conference America's standard terms, conditions and prices *effective at the time the services are rendered.*"[18] Conference America attached to its Verified Complaint a printout of the website terms and conditions showing that, by at least July 25, the $74.95 charge was posted on the website.[19] This is undisputed evidence that the $74.95 charge was in effect at least several days before Conference America's actual performance of the deactivation service on July 31.

Conexant cannot create a lack of mutual assent by claiming that it chose not to learn the price of the deactivation service that it requested. Indeed, Conference America expressly advised Conexant, by email on July 19, 2005, that "[i]f you have a specific question about the price applicable to any service not shown on our website and would submit that in writing, we would of course respond."[20] Conexant is a sophisticated company, and certainly could have reviewed Conference America's website or directed a written question to Conference

---

[17] (Exs. A ¶ 5a, D (at Attach. A, p. A-3), K, and Z to the Verified Complaint.)
[18] (Ex. K to the Verified Complaint (emphasis added).)
[19] (Ex. A ¶ 5a to the Verified Complaint, and page 1, lower right-hand corner.)
[20] (Ex. O to the Verified Complaint.)

America about the deactivation fee. Given its request for and acceptance of the deactivation service, Conexant's failure to read the website[21] or to ask any questions[22] may have been lazy or willfully ignorant, but does not constitute lack of assent.[23] Requesting a service while choosing to remain ignorant of the price does not excuse one from paying for that service once it is rendered.[24]

Additionally, and although Conexant is incorrect in its argument that the terminated Price Protection Agreement somehow continued to govern prices, that argument actually supports collection of the deactivation fee. The Price Protection Agreement expressly stated that any service used by Conexant that was not listed in the Agreement, which would include the deactivation service, was "available at Conference America's Standard Prices effective at the time services are rendered."[25] And it is undisputed, in fact, that during the term of the Price Protection Agreement (prior to its termination on July 10, 2005), Conexant used

---

[21] (Ex. V to the Verified Complaint. Conexant never followed up or asked Conference America about its Standard Prices.)

[22] (Id.; Deposition of Tom Noonan, attached to Pl.'s Mot. for Summ. J. as Ex. 1, at 53; Edge Dep., attached to Def.'s Resp. to Pl.'s Mot. for Summ. J. as Ex. B, at 44-45.)

[23] See SouthTrust Bank v. Williams, 775 So. 2d 184, 188-89 (Ala. 2000); Miller v. Thomason, 156 So. 773, 774 (Ala. 1934).

[24] See S. Nat'l Bank v. Crateo, Inc., 458 F.2d 688, 693 (5th Cir. 1972) ("[W]here parties enter into a contract despite their conscious ignorance of certain facts, it seems clear that they have concluded that the existence or nonexistence of these particular facts is of no consequence to them and would not influence or induce them to refrain from entering into the contract, whatever they may turn out to be.")

[25] (Ex. D, Attach. A, at A-3.)

and paid for services at the standard Conference America prices that did not have posted prices on Conference America's website or listed prices in the Agreement.[26]

Thus, as a matter of law and undisputed fact, Conexant assented to pay Conference America's Standard Prices for all of Conference America's post-termination services, including the deactivation service.

C. **Conexant Fails To Meaningfully Distinguish The Cases On Which Conference America Relies.**

The cases that Conference America cites in its Summary Judgment Brief, including SouthTrust Bank v. Williams,[27] Crawford v. Talk America, Inc.,[28] and Boomer v. AT&T Corp.,[29] bear on this matter because they illustrate the way in which a unilateral contract is formed. Conexant addresses these cases in Section III of its Response, but appears wholly to miss the point of the cases, espousing meaningless distinctions and factual or legal fallacies that are actually irrelevant to the elements of Conference America's breach of contract claim.

First, Conexant argues that the cases are arbitration cases, and therefore inapplicable to this matter.[30] This contention is meritless, as both the United States

---

[26] (Decl. of Robert M. Pirnie, attached to this Reply as Ex. 3, ¶¶ 5-7, and Exs. 1-6 thereto.)
[27] 775 So. 2d 184.
[28] No. 05-CV-0180-DRH, 2005 U.S. Dist. LEXIS 23181 (S.D. Ill. Oct. 6, 2005).
[29] 309 F.3d 404, 414-17 (7th Cir. 2002).
[30] (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 5-8.)

and Alabama Supreme Courts have explicitly held that arbitration provisions are no different from other contract provisions.[31]

Conexant also claims that this case, unlike <u>Williams</u>, does not feature a "change-in-term" clause that would allow Conference America to modify the terms of the parties' contract.[32] Conexant is wrong; such a clause clearly appears in Paragraph 1 of the website terms and conditions.[33] To the extent Conexant is basing its argument on the language of the Price Protection Agreement, Conexant is missing the point: that Agreement was terminated and is not the contract on which Conference America is basing its claim.

Conexant hints that the fact that it did not sign a document indicating its intent to be bound by the website terms and conditions precludes the formation of unilateral contracts between the parties.[34] Conexant is wrong again. The law is clear that "[a] contract does not have to be signed to be enforceable, so long as it is accepted and acted upon."[35]

Conexant repeatedly states that this case features a Price Protection Agreement containing a merger clause that precludes other enforceable agreements

---

[31] <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996); <u>Anderson v. Ashby</u>, 873 So. 2d 168, 198 n.25 (Ala. 2003) (See, J., concurring).
[32] (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 5.)
[33] (Ex. A to the Verified Complaint ¶ 1a.)
[34] (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 6.)
[35] <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore</u>, 751 So. 2d 8, 11 (Ala. 1999).

between the parties.[36] However, Conexant fails to address the fact that the Agreement and its merger clause were undisputedly terminated before the unilateral contracts were formed.[37] So when the unilateral contracts were formed, there was no existing merger clause or other agreement that could preclude them.

Conexant also incorrectly contends that Conference America would "like" to construe the website terms and conditions as an "amendment" to the Price Protection Agreement.[38] But Conference America has never done so. The Price Protection Agreement was terminated, effective July 10, 2005.[39] The unilateral contracts on which Conference America bases its claims are new, separate contracts that stand on their own.

Conexant also invites the Court to hold Conference America to a higher standard on Conference America's Motion for Summary Judgment because Conference America is a plaintiff.[40] Conexant does not, however, cite any authority for this specious notion that the rules should work differently for Conference America. In fact, they should not.

---

[36] (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 5-7.)
[37] (Exs. K, O, U to the Verified Complaint; see also Def.'s Mot. for Summ. J. at 2, 15, 17 (agreeing that Conference America terminated the Price Protection Agreement through its June 24, 2005 letter, attached to the Verified Complaint as Ex. K); Def.'s Resp. to Pl.'s First Req. for Admis. No. 1, attached to this Reply as Ex. 1.)
[38] (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 6.)
[39] (Exs. K, O, U to the Verified Complaint; see also Def.'s Mot. for Summ. J. at 2, 15, 17 (agreeing that Conference America terminated the Price Protection Agreement through its June 24, 2005 letter, attached to the Verified Complaint as Ex. K); Def.'s Resp. to Pl.'s First Req. for Admis. No. 1, attached to this Reply as Ex. 1.)
[40] (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 7-8.)

The Court should look beyond Conexant's scattershot of meaningless, incorrect distinctions to recognize that <u>Williams</u>, <u>Talk America</u>, and <u>Boomer</u> apply to this case because they explicitly demonstrate the way in which unilateral contracts are formed: a party's use of another party's services after the other party makes those services available only under certain conditions constitutes assent to a binding unilateral contract featuring those conditions. In this case, Conference America offered to make its post-termination services available to Conexant pursuant to the website terms and conditions, and Conexant accepted this offer by requesting and using those services. <u>Williams</u>, <u>Talk America</u>, and <u>Boomer</u> therefore apply to demonstrate the existence of valid unilateral contracts between the parties to this case, contracts that Conexant breached by refusing to pay for the services that it used. The Court should, accordingly, grant Conference America's Motion for Summary Judgment.

### III.  CONCLUSION

Conexant has failed to introduce evidence raising a genuine issue of material fact that could preclude summary judgment in Conference America's favor. The undisputed facts support each element of Conference America's claims. Conference America is therefore entitled to judgment as a matter of law, and the Court should grant Conference America's Motion for Summary Judgment.

This 18th day of August 2006.

- 17 -

                              TROUTMAN SANDERS LLP

                              <u>/s/ Thomas E. Borton IV</u>
                              Thomas E. Borton IV (BOR011)

5200 Bank of America Plaza      Attorney for Plaintiff Conference
600 Peachtree Street, N.E.         America, Inc.
Atlanta, GA  30308-2216
(404) 885-3000 (telephone)
(404) 962-6664 (fax)

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |  |
|---|---|---|
| CONFERENCE AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| | ) | FILE NO: |
| v. | ) | 2:05cv1088-WKW |
| | ) | |
| CONEXANT SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2006, I caused a copy of the foregoing to be mailed to the following via efile:

Joseph S. Miller, Esq.
Alicia M. Harrison, Esq.
Starnes & Atchison LLP
Post Office Box 598512
Birmingham, AL 35259-8512

/s/ Thomas E. Borton IV
Thomas E. Borton IV (BOR011)