IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CONFERENCE AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| | ) | FILE NO: |
| v. | ) | 2:05cv1088-WKW |
| | ) | |
| CONEXANT SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CONFERENCE AMERICA'S RESPONSE TO CONEXANT'S SUPPLEMENT TO ITS RESPONSE TO CONFERENCE AMERICA'S MOTION FOR SUMMARY JUDGMENT**

Conference America, Inc. ("Conference America") responds to Conexant Systems, Inc.'s ("Conexant's") Supplement to Its Response to Conference America's Motion for Summary Judgment. For the reasons below, as well as the reasons set forth in Conference America's summary judgment brief and reply, the Court should grant Conference America's Motion for Summary Judgment.

## I.  Introduction

Although Conference America's claim is based entirely on unilateral contracts whose terms are set forth on the website www.yourcall.com, Conexant persists in trying to defend based on a different, terminated contract. Conexant's course of dealing defense attempts to say that the express $74.95 price for

deactivation set forth in the unilateral contracts upon which Conference America's claim is based should instead be deemed to be $0.00 (i.e., free of any charge) based on a course of dealing arising from the amount allegedly charged (or rather, not charged) under the parties' previous, terminated, Price Protection Agreement.[1] This defense is contrary to well-established law governing consideration of course of dealing in interpreting contracts.[2] In fact, the case cited by Conexant in support of its course of dealing argument actually illustrates why Conexant's argument is incorrect.

Alabama law is clear that the parties' course of dealing under previous contracts can be considered only when the course of dealing is consistent with the express language of the contract being construed. In this instance, however, Conexant is attempting to say the $74.95 contract price should be ignored and the

---

[1] Conexant's course of dealing argument addresses only the price for deactivation services, and not the prices for the other services that are also the subject of this lawsuit. This inconsistency highlights the absence of any defense regarding nonpayment for the other services as well as the weakness of the course of dealing argument. If course of dealing really caused deactivation to be free, why wouldn't the other services likewise be governed by past discounted prices? The correct answer is the same for all services: as explained below, course of dealing did not cause any price to remain at any discounted level once Conference America established new unilateral contracts expressly at its standard prices.

[2] In addition, course of dealing is an affirmative defense. See, e.g., Liberty Tool v. Vortex Fishing Sys., 277 F.3d 1057, 1066 (9th Cir. 2001) (recognizing course of dealing as affirmative defense); Int'l Bd. of Teamsters, Local 371 v. Rock Island Integrated Svcs., No. 05-4078, 2006 U.S. Dist. LEXIS 47278, at *11 (C.D. Ill. 2006) (same). Rule 8(c) requires that such defenses be raised in a responsive pleading. Because Conexant has not done so, the Court should find that Conexant has waived its course of dealing argument. Am. Nat'l Bank v. FDIC, 710 F.2d 1528, 1537 (11th Cir. 1983) (holding that defendant waived affirmative defense by failing to raise it in responsive pleading, rejecting defendant's contention that it sufficiently raised the issue before the district court, and instead finding that defendant "merely advanced the notion" of the defense). As in American National Bank, Conexant has until now at most "merely advanced the notion" of a course of dealings argument.

price deemed to be zero simply because a similar service was allegedly provided free of charge under a previous, different contract. A $74.95 price and a zero price are not only inconsistent, they are completely irreconcilable. Conexant's course of dealing argument is also irreconcilable with the express statement in the unilateral contracts that their terms supersede all prior "agreements, understandings, discussions, warranties and representations, in any form, express or implied, between the parties."[3]

    Finally, Conexant's argument is belied by its own admissions. It is undisputed that Conexant knew that the termination of the Price Protection Agreement and application of standard pricing would result in substantial price increases. It is undisputed that Conexant did not bother to follow-up on Conference America's express offer to explain any specific pricing Conexant wished to inquire in writing about. Conexant's alleged assumption that deactivation would be free and its failure to inquire or inform itself of the actual price prior to taking the service do not somehow trump the express terms of the new unilateral contracts.

---

[3] (Ex. A to the Verified Complaint ¶ 13.)

## II.  Conexant's Course Of Dealing Argument Is Contrary To Established Law.

Under Alabama law, a "course of dealing" is defined as follows:

> A "course of dealing" is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

Alabama Code § 7-1-303(b) (2006).[4]

In construing a contract based on a course of dealing, Alabama law establishes a clearly articulated hierarchy:

> "[T]he express terms of an agreement and any applicable…course of dealing…must be construed whenever reasonable as consistent with each other.  If such a construction is unreasonable…[e]xpress terms prevail over….course of dealing . . . ."

Alabama Code § 7-1-303(e) (2006).[5]

Under this definition and rule of construction, Conexant's course of dealing argument would be possible only if free deactivation services were consistent with the express price terms of the unilateral contracts that are the subject of this lawsuit.  However, it is undisputed that those express terms stated that the applicable price for any service would be the standard price in effect at the time the service was performed, and it is also undisputed that on the date deactivation was performed, July 31, 2005, the standard deactivation price posted on the website

---

[4] While this provision appears in the Alabama Commercial Code, it is consistent with the Alabama common law of contracts and stands as the most current explanation of the term.
[5] See note 4, *supra.*

- 4 -

was $74.95.[6]  "Free" and "$74.95" are not only inconsistent, they are irreconcilable.  One price or the other must apply.  In such a case, Alabama Code § 7-1-303(e) clearly specifies that the express term–the posted $74.95 price–prevails, even if the parties' prior dealings were at a different price.

This rule makes perfect sense:  if past prices governed over newer, expressly stated prices, it would not be possible for parties to enter with any certainty into new contracts at new prices.  In this instance, it is undisputed that Conference America clearly informed Conexant on June 24, 2005, that the Price Protection Agreement under which the course of dealing allegedly existed was terminated, and that "*any*" services requested by Conexant after termination were subject to Conference America's website terms, conditions, and prices in effect at the time the service was rendered.[7]  It is undisputed that Conference America reconfirmed this fact on July 26, after Conexant had requested account deactivation and before deactivation was performed, when it informed Conexant in writing that it would perform deactivation as requested and that "*any*" services rendered after termination would be provided in accordance with the website terms and conditions, "including price terms."[8]  Specifically with respect to deactivation services, Conference America made clear that it was a "*service* we [Conference

---

[6] (Ex. A to the Verified Complaint ¶ 5a and lower right-hand corner.)
[7] (Ex. K to the Verified Complaint (emphasis added).)
[8] (Ex. U to the Verified Complaint (emphasis added).)

America] offer and we will comply with your instructions [to deactivate all accounts as of July 31]."[9] Conference America emphasized that it would "vigorously enforce its right to be paid" for all services used.[10] These undisputed facts establish that, whatever the parties' course of dealing may have been under the terminated Price Protection Agreement, the price for the July 31, 2005 deactivation services that Conexant requested would be the standard price posted on July 31, 2005—which Conexant does not dispute was $74.95—and Conexant would be expected to pay it.

Conexant's attempt to rely on course of dealing under the prior agreement is also precluded by the "Entire Agreement" provision in the new, unilateral agreements, which states:

> 13. Entire Agreement; Amendment. These Terms and Conditions, the User Policies, Credit Card Authorization Form and Agreement and the Account Application are the entire agreement between the parties with respect to your use of the Events and supersede all agreements, understandings, discussions, warranties and representations, in any form, express or implied, between the parties prior to the Agreement and related to the Events. Except as otherwise provided in this Agreement, the Agreement may only be amended by a writing signed by each party.[11]

---

[9] (Id. (emphasis added).) Conexant's statement to the contrary on page 3 of its brief is misleading at best. Conference America's July 26 letter specifically talks about deactivation and about the applicability of website prices to all services, and encourages Conexant to look at those prices for itself.
[10] (Id.)
[11] (Ex. A to the Verified Complaint ¶ 13.)

This provision specifically contradicts Conexant's effort now to suggest that the price terms were somehow based on a terminated prior agreement. This express language, like the express price term itself, precludes Conexant from using course of dealing, parol evidence, or other extrinsic devices to argue for a different price.[12]

The case relied on by Conexant, *Ex Parte Amoco Fabrics Co.*,[13] is an odd choice. First, the primary thrust of that case is the enforceability of a unilateral contract under Alabama law on much less conclusive evidence than the undisputed facts in this case demonstrating offer, communication, acceptance, and consideration. Having attempted to sidestep the entire subject of unilateral contracts in every prior brief (this may be the first time Conexant has acknowledged such things exist!), it is curious to see Conexant now make Conference America's own point.

A second reason *Amoco Fabrics* is an odd case for Conexant to cite is that while the court uses the phrase "course of dealing" in a casual sense, the case does not actually involve course of dealing as that term is defined by statute and as Conexant is using it in this case. As explained above, the statutory definition of "course of dealing" requires at least two contracts between the same two parties. But the court in *Amoco Fabrics* was actually reviewing only a single employment

---

[12] See Ala. Code § 7-1-303(e); Hamilton Sec. Advisory Svcs v. United States, No. 98-169C, 2004 U.S. Claims LEXIS 147, at *21-*26 (Fed. Cl. June 14, 2004) (integration clause precludes consideration of parol evidence, course of performance, and other extrinsic aids).
[13] 729 So. 2d 336 (Ala. 1998).

contract for each plaintiff, and by "course of dealing" the court was actually referring to the parties' "course of performance" of each such contract.[14] This distinction is not mere semantics; it is relevant to this case. Unlike the mislabeled course of performance analysis in *Amoco Fabrics* in which a party's performance under a contract was being analyzed to construe that same contact's terms, Conexant is trying to use performance under the terminated Price Protection Agreement to modify a conflicting express price term in the parties' subsequent unilateral agreements. That is exactly what Ala. Code § 7-1-303(e) says Conexant cannot use course of dealing to do.

Thus, not only did *Amoco Fabrics* involve a different legal issue than Conexant is attempting to present, but its analysis of the general principals of unilateral contract law directly support the points Conference America has been making in its motion for summary judgment.

Finally, in addition to the deficiencies of Conexant's argument under the law governing course of dealing, Conexant's self-serving suggestion that it assumed deactivation would be free based on course of dealing is directly contradicted by its own undisputed written statements that it knew prices were being increased

---

[14] Compare Ala. Code § 7-1-303(b) (definition of "course of dealing") with § 7-1-303(a) (definition of "course of performance").

substantially.[15] Although Conexant knew prices were increasing and Conference America expressly offered to answer any questions about the new pricing, it is undisputed that Conexant never inquired about either deactivation or any other price. As the Fifth Circuit cogently observed in <u>Southern National Bank v. Crateo, Inc.</u>,

> [w]here parties enter into a contract despite their conscious ignorance of certain facts, it seems clear that they have concluded that the existence of these particular facts is of no consequence to them and would not influence or induce them to refrain from entering into the contract, whatever they may turn out to be.[16]

For these reasons, Conexant's course of dealing argument fails. The Court should therefore grant Conference America's Motion for Summary Judgment.

This 6th day of October 2006.

                TROUTMAN SANDERS LLP

                <u>/s/ Thomas E. Borton IV</u>
                Thomas E. Borton IV (BOR011)

| | |
|---|---|
| 5200 Bank of America Plaza<br>600 Peachtree Street, N.E.<br>Atlanta, GA  30308-2216<br>(404) 885-3000 (telephone)<br>(404) 962-6664 (fax) | Attorney for Plaintiff Conference America, Inc. |

---

[15] (<u>See</u> Exs. N and P to the Verified Complaint; Deposition of Thomas Noonan, Director, Strategic Sourcing, Conexant Sys., Inc., attached to Conexant's Motion for Summary Judgment as Ex. 5, at Exs. 3-4.)
[16] 458 F. 2d 688, 693 (5th Cir. 1972).

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CONFERENCE AMERICA, INC.,            ) | |
| )  | |
| Plaintiff,            ) | |
| ) | CIVIL ACTION |
| ) | FILE NO: |
| v.            ) | 2:05cv1088-WKW |
| ) | |
| CONEXANT SYSTEMS, INC.,            ) | |
| ) | |
| Defendant.            ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2006, I caused a copy of the foregoing to be mailed to the following via efile:

> Joseph S. Miller, Esq.
> Alicia M. Harrison, Esq.
> Starnes & Atchison LLP
> Post Office Box 598512
> Birmingham, AL 35259-8512

>                                 /s/ Thomas E. Borton IV
>                                 Thomas E. Borton IV (BOR011)